UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                        :
JOEL HERRERA,                        :
                    Petitioner,    :        19 Civ. 5321 (LGS)
                        :
        -against-           :        **OPINION AND ORDER**
                        :
MICHAEL CAPRA,          :
                        :
                  Respondent.  :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

Pro se Petitioner Joel Herrera petitions for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (the "Petition").  For the reasons stated below, the Petition is denied in its entirety.

### I.   BACKGROUND

Petitioner was found guilty of manslaughter in the first degree (N.Y. Penal Law § 125.20[1]) and gang assault in the first degree (N.Y. Penal Law § 120.07) for the stabbing of Glenn Wright.  Petitioner pursued a direct appeal and post-conviction collateral relief in New York state court before filing the Petition.  The following facts are only those necessary to rule on the Petition.  *See Fazio v. United States*, No. 11 Cr. 0873, 2017 WL 4232574, at *1 (S.D.N.Y. Sept. 22, 2017).

#### A.  Suppression Hearing

On October 12, 2010, Petitioner moved to suppress his bloodstained clothing and the incriminating statements he made to the police and prosecutors as (1) fruits of an illegal arrest, (2) in violation of his *Miranda* rights and (3) involuntarily made.

Police Officers Christopher Delmar and Thomas Gallagher testified that on September 12, 2009, they were patrolling in an unmarked vehicle on Manhattan's Lower East Side and saw

Petitioner running down the street.  When Petitioner saw the officers, he stopped running and looked "scared" or "evasive" and moved as if to enter a bodega.  The officers continued driving and, after seeing Petitioner start running again in their car mirror, circled back onto the block and exited their vehicle.  Petitioner was wearing a dark blue or black shirt and had blood on his hands, forehead and shirt.  Petitioner stated that he had a bloody nose and was going home to get a napkin, but the officers saw no evidence of a nosebleed.  The officers directed Petitioner to put his hands on a nearby vehicle, and Officer Delmar frisked him for a weapon.  "Seconds later," the officers received a radio alert of the stabbing and a description of the suspects as four males wearing black t-shirts.

The officers then saw three men running up the street with black shirts "tucked" and "hidden" on their persons.  The officers stopped the men and had them put their hands on the car next to Petitioner.  The officers kept Petitioner and the other three men by the car so that two detectives, Perez and Pettit, could drive by with an eyewitness named Ruiz in order to see if he recognized anyone from the crime scene.  No positive identification resulted, and Petitioner was brought to the police precinct around 7:00 PM.

Detective David Belcher testified as to Petitioner's questioning at the precinct.  At approximately 10:50 PM on September 12, 2009, before receiving *Miranda* warnings, he asked Petitioner pedigree questions, and Petitioner recounted that he had been smoking marijuana with his friends in a park and was going home when he was detained.  Belcher then verbally Mirandized Petitioner, who signed a *Miranda* waiver at approximately 11:05 PM.  During the subsequent hour-long interview, Belcher told Petitioner that Wright was seriously injured and, in effect, that "all [Belcher wanted] was the truth" and "to hear his side of the story" and that he didn't think Petitioner was a "cold-blooded killer."  Petitioner responded, "Why did it happen?

He did something. That's all I can say -- I'm sorry.  That's all I can tell you.  I'm not a cold-blooded killer."  He later stated, "wrong place, wrong time."  About an hour later, at 11:50 PM, Petitioner wrote and initialed his first written statement: "All I have to say is wrong place, wrong time.  I should have never been on the lower east side."  Belcher signed the statement and left the room but subsequently reentered at various points over the next three hours to ask other questions.  Belcher testified that Petitioner was fed during this time.

At approximately 3:25 AM on September 13, 2009, Belcher reentered the interview room and re-read Petitioner his *Miranda* rights, and Petitioner signed a second *Miranda* waiver. Belcher testified that because it was now a new day and had been a "long period of time" he wanted "to make sure [Petitioner] still want[ed] to speak to [him]" and figured "it wouldn't hurt."  Petitioner eventually wrote a second statement: "Something happened.  And the next thing, you know, there's blood or what I think is blood.  Then I started running.  It happened so fast.  If I did inflict harm unintentionally, I'm gratefully sorry for him and his family."

Detective Kevin Madden then testified that he interrogated Petitioner about an hour and a half later, on September 13, 2009, at approximately 5:20 AM.  Madden did not read Petitioner his *Miranda* rights "because he had been read *Miranda* warnings twice prior by another detective."  Detective Madden told Petitioner, "you need to write a statement out, the truth, no more lying, you know there's blood on your shirt."  Petitioner then wrote a third statement:

> The victim had gotten stabbed during a fight I had with him.  Although I do not know how he got stabbed in details, the weapon was never mine to begin with.  A month prior to the incident, the victim allegedly assaulted and robbed my little cousin in that neighborhood.  Through my investigation, it led me to believe the victim was the perp.  I really wanted was to teach him a lesson physically as to use only my own hands.  Therefore I never had a weapon to begin with.  It was stupid to seek revenge for my cousin because in the end result look where it got me.  Besides no property is ever worth more t[h]an a life.

Petitioner's interrogation lasted approximately seventeen hours.  The detectives testified that Petitioner was allowed to sleep and was provided food, and was not confined at all times to the interview room.

The defense did not object at any point during the State's summation at the suppression hearing.  Instead, the defense argued that Petitioner's seizure lacked probable cause, as it was initiated merely because petitioner seemed to be avoiding the officers at a time before the officers heard of the stabbing.  The defense also argued that Petitioner's statements were involuntary because: (1) his first statement "although not an unequivocal invocation of the right to remain silent . . . certainly gives a hint that . . . [Petitioner] is not too keen on speaking to the police"; (2) it was unclear whether Petitioner was handcuffed the entire time; (3) the multiple *Miranda* warnings cut against voluntariness and (4) during a later videotaped statement, Petitioner said he only wanted to answer questions to a certain extent.

The suppression court found probable cause for Petitioner's arrest, given the totality of the circumstances: the blood, his "apparent" lies about the blood and the near-contemporaneous report of the stabbing.  The suppression court found no *Miranda* violation, noting that Petitioner was Mirandized several times and finding that, as a person of reasonable intelligence, Petitioner was aware he was not required to answer questions or make any statements.  Lastly, the court also found that "as to voluntariness in the traditional sense, it's perfectly clear beyond a reasonable doubt that none of the police conduct operated to overbear [Petitioner's] will."  At no point did defense counsel object.

### B.  Trial Proceedings

Petitioner's first trial resulted in a mistrial.  At Petitioner's second trial, the State introduced testimony of Kerry Annitto, a DNA expert, who testified that: (1) blood was on

Petitioner's clothing; (2) DNA profiles were made from Petitioner's clothes; (3) only Petitioner's

DNA was present on his white shirt; (4) only Wright's DNA was present on one of eight stains

on Petitioner's jeans and (5) the remaining seven stains contained "mixtures of DNA from Glenn

Wright and another person."

The jury found Petitioner guilty of manslaughter in the first degree (N.Y. Penal Law §

125.20[1]) and gang assault in the first degree (N.Y. Penal Law § 120.07).  Petitioner was

sentenced on June 26, 2012, to concurrent prison terms of twenty years, followed by five years

of post-release supervision.

### C.  Petitioner's Direct Appeals

Petitioner appealed his conviction to the Supreme Court Appellate Division, First

Department, claiming his statements should have been suppressed (1) as fruit of an illegal arrest,

(2) because the police disregarded his invocations of his right to remain silent under *Miranda*

and (3) because the length of the interrogation rendered his incriminating statements involuntary.

The First Department unanimously affirmed the trial court's judgment.  *See People v. Herrera*,

58 N.Y.S.3d 319 (1st Dep't 2017).  The court found the motion to suppress properly denied

because "the totality of the chain of information known to the police . . . provided probable cause

for his arrest . . . ."  *Id.* (internal citation omitted).  The First Department also held that

Petitioner's "statements were voluntary under all the circumstances, and the police did not use

any tactics designed to overbear defendant's will."  *Id.*  Finally, the First Department held that

Petitioner did not preserve his *Miranda* claim, and alternatively found that "when viewed in

context, the comments cited by defendant did not constitute unequivocal invocations of the right

to remain silent or requests that the interview be terminated."  *Id.*  The New York Court of

Appeals subsequently summarily denied Petitioner's application for leave to appeal the same issues. *People v. Herrera*, 101 N.E.3d 981 (N.Y. 2018).

### D.  Petitioner's Collateral State Proceedings

On April 12, 2018, Petitioner, now proceeding pro se, moved pursuant to New York Criminal Procedure Law ("N.Y.C.P.L.") § 440.10 to vacate his judgment for: (1) prosecutorial misconduct and (2) ineffective assistance of trial counsel.  *See* N.Y. CRIM. PROC. LAW § 440.10. The § 440.10 motion was denied.  The "440 Court" found Petitioner's claims were barred pursuant to § 440.10(2)(c) because they were "entirely record based" and Petitioner had "unjustifiably failed" to raise them on direct appeal.  ECF 15 at 464.  Moreover, the 440 Court rejected Petitioner's claim that his attorney's failure to call an eyewitness at trial was outcome determinative, as Petitioner "concede[d] that his trial attorney did 'just enough to pass the threshold on reasonable representation so as to be considered he gave effective assistance of counsel.'"  ECF 15 at 437, 465.  Petitioner's subsequent appeal petition on the 440 Court's decision was denied.

### E.  The Instant Habeas Petition.

On July 3, 2019, Petitioner filed the instant petition pursuant to 28 U.S.C. § 2254, claiming that: (1) his incriminating statements should be suppressed because his arrest was unsupported by probable cause and his statements were involuntary and taken despite his invocation of his right to remain silent; (2) the prosecutor misrepresented the evidence during summation; (3) the prosecutor knowingly suborned a witness's perjury; (4) the prosecutor withheld favorable evidence and (5) Petitioner's trial counsel was ineffective for failing to find and call an eyewitness and preserve errors for appellate review.

## II.  LEGAL STANDARDS

### A.  Procedural Bars to Habeas Review

#### i.  Independent and Adequate State Grounds

"A federal court 'will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment.'"  *Brown v. Lee*, No. 14 Civ. 9718, 2019 WL 5078360, at *3 (S.D.N.Y. Oct. 10, 2019) (quoting *Downs v. Lope*, 657 F.3d 97, 101 (2d Cir. 2011)); *accord Cotto v. Herbert*, 331 F.3d 217, 238 (2d Cir. 2003).  "A judgment is 'independent' if the 'last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar.'"  *Brown*, 2019 WL 5078360, at *3 (quoting *Harris v. Reed*, 489 U.S. 255, 263 (1989)).  "A procedural bar is 'adequate . . . if it is based on a rule that is firmly established and regularly followed by the state in question.'"  *Id.* (quoting *Monroe v. Kuhlman*, 433 F.3d 236, 241 (2d Cir. 2006)).

The independent and adequate state ground rule "applies whether the state law ground is substantive or procedural."  *Cotto*, 331 F.3d at 238 (internal quotation marks omitted); *accord Walker v. Martin*, 562 U.S. 307, 315 (2011).  Equally, "[t]his preclusion applies even if the state court alternatively rules on the merits of the federal claim, so long as there is an adequate and independent state ground that would bar the claim in state court."  *Albanese v. Capra*, No. 13 Civ. 5152, 2017 WL 9534740, at *7 (S.D.N.Y. Feb. 24, 2017) (citing *Garcia v. Lewis,* 188 F.3d 71, 77 (2d Cir. 1999)), *report and recommendation adopted*, No. 13 Civ. 5152, 2017 WL 2954401 (S.D.N.Y. July 10, 2017); *see also Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir.1990).  Thus, "as long as the state court explicitly invokes a procedural bar rule as a separate basis for decision," the independent and adequate state grounds doctrine "curtails reconsideration of the

federal issue on federal habeas." *Martinez v. Colvin*, No. 17 Civ. 757, 2018 WL 7047148, at *5

(quoting *Harris*, 489 U.S. at 264 n.10); *see Velasquez*, 898 F.2d at 9.  However, in "exceptional

cases," the "exorbitant application of a generally sound [state procedural] rule renders the state

ground inadequate to stop consideration of a federal question." *Lee v. Kenma*, 534 U.S. 362, 376

(2002); *accord Brown*, 2019 WL 5078360, at *3.

### ii.  Overcoming the Procedural Bar

A procedurally defaulted claim still may be reviewed by a federal court only if (1) "the

petitioner has shown cause for the default and actual prejudice as a result of the alleged violation

of federal law," or (2) "demonstrate[d] that failure to consider the claims will result in a

fundamental miscarriage of justice." *Rios v. New York*, No. 16 Civ. 8865, 2019 WL 8273239, at

*7 (S.D.N.Y. Nov. 26, 2019) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750, (1991)

(alteration in original)); *accord Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011).  "'Cause' is

established when 'some objective factor external to the defense' impeded the petitioner's efforts

to comply with the state's procedural rule." *Olsen v. Doldo*, No. 16 Civ. 5366, 2020 WL

685707, at *17 (S.D.N.Y. Jan. 2, 2020) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

"Actual prejudice" is more than "possibility of prejudice," and requires a showing of "actual and

substantial disadvantage." *Jones v. United States*, No. 17 Cr. 770, 2020 WL 4887025, at *3

(S.D.N.Y. Aug. 19, 2020) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).  In order

to satisfy the "fundamental miscarriage of justice" exception, a "petitioner must make a showing

of actual innocence," *Olsen*, 2020 WL 685707, at *18 (citing *Schlup v. Delo*, 513 U.S. 298, 321

(1995)), which requires a petitioner to bring forward "new reliable evidence -- whether it be

exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence --

that was not presented at trial." *Hyman v. Brown*, 927 F.3d 639, 660 (2d Cir. 2019) (quoting *Schlup*, 513 U.S. at 324).

### B. AEDPA Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, governs petitions for habeas relief brought by state prisoners.  Under AEDPA, a state prisoner may seek habeas corpus relief in federal court "on the ground that he is in custody in violation of the Constitution or laws . . . of the United States."  28 U.S.C. § 2254(a).  "The writ may not issue for any claim adjudicated on the merits by a state court unless the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States,' or was 'based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.'"  *O'Daniel v. Martuscello*, 768 F. App'x 79, 80 (2d Cir. 2019) (summary order) (quoting 28 U.S.C. §§ 2254(d)(1)–(2)).

### III.   DISCUSSION

A habeas petitioner "bears the ultimate burden of proving by a preponderance of the evidence that his constitutional rights have been violated."  *Cardoza v. Rock*, 731 F.3d 169, 178 (2d Cir. 2013); *accord Zuniga v. Lamana*, No. 18 Civ. 5717, 2019 WL 4124416, at *6 (S.D.N.Y. Aug. 30, 2019).  However, pro se submissions "must be held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94, (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)), and must be construed "liberally to raise the strongest arguments that they suggest."  *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (internal quotation mark omitted); *accord Perkins v. Perez*, No. 17 Civ. 1341, 2020 WL 248686, at *4 (S.D.N.Y. Jan. 16, 2020).

### A.  Suppression Claims

Petitioner argues his statements to the police and the physical DNA evidence collected from his clothes should have been suppressed as fruit of an arrest in violation of the Fourth Amendment's probable cause requirement.  Alternatively, Petitioner argues his statements should have been suppressed as a violation of the Fifth Amendment, either because the police "disregarded" his invocation of his *Miranda* rights or because his statements were involuntary under the circumstances.  Petitioner's Fourth Amendment and *Miranda* claims are procedurally barred and therefore unreviewable.  The voluntariness claim is denied on the merits.

### i.  The Fourth Amendment Claim Is Procedurally Barred

"[E]vidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure." *United States v. Calandra*, 414 U.S. 338, 347 (1974); *see United States v. Hightower*, 950 F.3d 33, 36 (2d Cir. 2020).  "As a general rule, Fourth Amendment claims are not reviewable by the federal courts when raised in a [§ 2254 habeas] petition . . . unless the state prisoner shows that he or she has not had a full and fair opportunity to litigate that claim in the state court." *Graham v. Costello*, 299 F.3d 129, 133–34 (2d Cir. 2002); *accord Sheard v. Lee*, No. 18 Civ. 2125, 2019 WL 5847151, at *5 (S.D.N.Y. Oct. 7, 2019).  A defendant is denied a full and fair opportunity to litigate his Fourth Amendment probable cause claim "(a) if the state has provided no corrective procedures at all to redress the alleged Fourth Amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992); *accord Sheard,* 2019 WL 5847151, at *5.  "[F]ederal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in [N.Y.C.P.L.] § 710.10 *et seq.*," which

10

provides litigants with procedural recourse to suppress possibly inadmissible evidence, including the possibility of a hearing. *Capellan*, 975 F.2d 67 at 70 n.1; *accord Slater v. Gonyea*, No. 16 Civ. 8540, 2019 WL 5790618, at *7 (S.D.N.Y. Sept. 23, 2019); *see also* N.Y. CRIM. PROC. LAW § 710.60(4).

Petitioner's Fourth Amendment claims are procedurally barred because he was provided a full and fair opportunity to litigate those claims in state court. He was granted a three-day hearing on the probable cause issue prior to trial. *See* CRIM. PROC. § 710.60(4). At that hearing, Petitioner's counsel cross-examined each witness and extensively argued the suppression motions. Petitioner's arguments were then considered by the First Department on appeal. *See Herrera*, 58 N.Y.S.3d at 320. Thus the "[t]he State of New York unquestionably has provided [petitioner] . . . with the necessary corrective procedures through [N.Y.C.P.L.] § 710." *Davila v. Lee*, No. 11 Civ. 496, 2014 WL 7476207, at *20 (S.D.N.Y. Dec. 30, 2014). Moreover, there is no record evidence of an "unconscionable breakdown" in the process. *Id.* Instead, the issue was addressed at length at the suppression hearing and on appeal. *See Sheard*, 2019 WL 5847151, at *6; *Davila*, 2014 WL 7476207, at *20; *Slater*, 2019 WL 5790618, at *7 (collecting cases). Because Petitioner "has been provided an opportunity for full and fair litigation of [his] Fourth Amendment claim," he has failed to make a "substantial showing of the denial of a constitutional right." Graham, 299 F.3d at 131; see 28 U.S.C. § 2454(a).

### ii.  Petitioner's *Miranda* Claim Is Procedurally Defaulted

"Once *Miranda* warnings have been given, if the individual indicates that he wishes to remain silent, the interrogation must cease." *United States v. O'Brien*, 926 F.3d 57, 73 (2d Cir. 2019) (internal quotation marks omitted). Petitioner claims "the police disregard[ed]" and "ignored" his "invocations of [his] right to remain silent during the . . . interrogation" and as such

his post-*Miranda* statements should have been suppressed.  This claim is procedurally barred from federal habeas review under the independent and adequate state ground rule, as Petitioner did not object to these statements in state court contemporaneous to the court's decision on that issue at the suppression hearing.

"To preserve an issue of law for appellate review, counsel must register an objection and apprise the court of grounds upon which the objection is based at the time of the allegedly erroneous ruling or at any subsequent time when the court had an opportunity of effectively changing the same." *People v. Bailey*, 110 N.E.3d 489, 494 (N.Y. 2018) (quoting N.Y.C.P.L. § 470.05(2)).  The Second Circuit has "held repeatedly that [this] contemporaneous objection rule is a firmly established and regularly followed New York procedural rule." *Downs*, 657 F.3d at 104 (collecting cases); *accord Rios*, 2019 WL 8273239, at *6.

In the last reasoned state-court decision on Petitioner's claim, the Appellate Division noted that Petitioner did not follow the contemporaneous objection rule:

> [Petitioner] did not preserve his claim that he invoked his right of silence, and we decline to review it in the interest of justice. As an alternative holding, we find that when viewed in context, the comments cited by defendant did not constitute unequivocal invocations of the right to remain silent or requests that the interview be terminated.

*Herrera*, 58 N.Y.S.3d at 320 (citation omitted); *see also Brown*, 2019 WL 5078360, at *3.  The Appellate Division's description of Petitioner's failure to preserve his claim thus relied on New York's contemporaneous preservation rule.  *See Coleman*, 501 U.S. at 739 ("[W]e will not impose on state courts the responsibility for using particular language in every case in which a state prisoner presents a federal claim."); *accord Adams v. Keyser*, No. 16 Civ. 129, 2016 WL 4429889, at *23 (S.D.N.Y. May 3, 2018); *see also Brown*, 2019 WL 5078360, at *3.  That the Appellate Division gave an alternate holding on the merits is of no import because the "Second

Circuit has made clear that federal habeas review is foreclosed when a state court has expressly

relied on a procedural default as an independent and adequate state ground, even where the state

court has also ruled in the alternative on the merits of the federal claim." *Brown v. Perlman*, No.

07 Civ. 8672, 2008 WL 2009220, at *16 (S.D.N.Y. May 8, 2008), *report and recommendation*

*adopted*, No. 07 Civ. 8672, 2008 WL 2545066 (S.D.N.Y. June 23, 2008) (quoting *Velasquez*,

898 F.2d at 9); *accord Harris*, 489 U.S. at 264 n.10.

Finally, pro se Petitioner does not explicitly claim that his is an "exceptional case[]"

involving an "exorbitant application" of the "generally sound rule" that an objection must be

contemporaneous with a ruling to be appealable. *Silva v. Key*ser, 271 F. Supp. 3d 527, 542

(S.D.N.Y. 2017) (quoting *Kenma*, 534 U.S. at 376).  Even when the pro se petition is broadly

construed to raise such a claim, it does not succeed, because each of the three factors courts

consider in making this determination under *Cotto*, 331 F.3d at 217, weigh against Petitioner:

(1) there was no reliance on the alleged procedural violation in the trial court, as Petitioner did

not raise it until appeal; (2) there were no unique circumstances or sudden unanticipated events

that led to Petitioner's noncompliance with the contemporaneous objection rule and (3) there was

no substantial compliance with the rule in light of the realities of trial, because Petitioner had

ample time to object to the trial court's ruling at the suppression hearing and did not do so.

Accordingly, Petitioner's *Miranda* claim is procedurally defaulted.

Petitioner does not claim cause or prejudice to excuse his procedural default.  *Olsen*,

2020 WL 685707, at *17, 32.  Instead, he claims actual innocence, contending that he has

"presented 'new' reliable evidence by introducing testimony of Ruiz which the jury did not

hear," that proves his factual innocence.  As cited by Petitioner and appended to the Petition,

Ruiz's testimony, which was provided at a co-defendant's trial, described what Ruiz saw at the scene of the stabbing:

> I seen what looked to me to be a bunch of guys all scuffling . . . .  Just arms swinging, just sort of like wrestling, could have been playing, could have been, I don't know, just wrestling around . . . one of the guys jumped over . . . the gate . . . and he passes me holding his neck and I just see blood squirting out everywhere.

This testimony, which does not name or identify Petitioner in any way, is not exculpatory, and does not meet the "deliberately demanding" standard of actual innocence, *Hyman*, 927 F.3d at 660; that is, "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial." *Id.* at 657.  First, there is no guarantee what Ruiz would have testified at Petitioner's trial.  *See Smith v. Ercole*, No. 8 Civ. 351, 2010 WL 6595338, at *23 (N.D.N.Y. June 16, 2010) ("[H]abeas claims based on complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified to are largely speculative"), *report and recommendation adopted*, No. 8 Civ. 351, 2011 WL 1748545 (N.D.N.Y. May 6, 2011).  Second, Ruiz did not identify Petitioner as present or absent from the scene.  *See Cosey v. Lilley*, No. 18 Civ. 11260, 2020 WL 2539065, at *9 (S.D.N.Y. May 19, 2020) (a putative witness's "inability to testify to what actually happened at the scene is not the kind of clear and convincing evidence with which no reasonable factfinder would have found the petitioner guilty of the murder charge").  Third, Ruiz's testimony does not contravene other evidence adduced at trial as to Petitioner's guilt.  *See Hyman*, 927 F.3d at 659–60.  Fourth, Ruiz's testimony is not "reliable, i.e., credible" as a "trustworthy eyewitness account[]," *id.* at 656, given that it is a

single page of a trial transcript from a later trial of Petitioner's co-defendant, with no assurances that Ruiz was not cross-examined or impeached.[1]

For these reasons, Petitioner ultimately fails to provide any new factual evidence demonstrating actual innocence.  *See Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002). Accordingly, there is no reason to lift the procedural bar, and the Court may not reach the merits of Petitioner's *Miranda* claims.

### iii.  Petitioner's Statements Were Voluntary

Petitioner claims that his statements should be suppressed because the prosecution failed to demonstrate that they were voluntary.  At the suppression hearing, the court found that "as to voluntariness in the traditional sense, it's perfectly clear beyond a reasonable doubt that none of the police conduct operated to overbear [Petitioner's] will."  The Appellate Division affirmed this finding, *Herrera*, 58 N.Y.S.3d, and the Court of Appeals denied Petitioner's appeal request. *Herrera*, 101 N.E.3d 981.  Accordingly, this claim is exhausted for the purposes of AEDPA review and no procedural bar precludes merits review in this proceeding.  *Olsen*, 2020 WL 685707, at *16.

As to the merits of this claim, the relevant question is whether the Appellate Division's decision on voluntariness was "contrary to" or "an unreasonable application of" clearly established federal law or resulted in a decision "based on an unreasonable determination of the facts."  *See* 28 U.S.C. § 2254(d).  "The test of a [statement's] voluntariness is whether an

---

[1] Petitioner's contention that Ruiz is credible is grounded only in a claim (1) that "his statement was used to obtain a[n unspecified] search warrant" and (2) that Ruiz also testified as "a witness for the People 6 years after the crime in [the co-defendant's] trial."  These allegations are unpersuasive.  Petitioner's claim as to the search warrant is wholly conclusory, while Ruiz's later testimony in a different trial provides no assurance about the reliability of his testimony as to Petitioner.

examination of all of the circumstances demonstrates that the conduct of 'law enforcement

officers was such as to overbear [the defendant's] will to resist and bring about confessions not

freely self-determined[.]'"  *Delesline v. Conway*, 755 F. Supp. 2d 487, 501 (S.D.N.Y. 2010)

(quoting *Rogers v. Richmond*, 365 U.S. 534, 544 (1961)); *accord United States v. Morgan*, No.

15 Cr. 464, 2016 WL 1071108, at *4 (S.D.N.Y. Mar. 18, 2016).  "To determine voluntariness, a

court should look to the totality of the circumstances in which the confession was given."

*Delesline*, 755 F. Supp. 2d at 501 (citing *Arizona v. Fulminante*, 499 U.S. 279, 282–89 (1991));

*accord United States v. Haak*, 884 F.3d 400, 409 (2d Cir. 2018).  Factors considered "include (1)

the characteristics of the accused, such as experience and background, (2) the conditions of

interrogation, such as the place and length of questioning and the presence of counsel, and (3) the

conduct of law enforcement officials, including psychologically coercive techniques such as

brainwashing or promises of leniency or other benefits."  *McCall v. Rivera*, 965 F. Supp. 2d 311,

322 (S.D.N.Y. 2013) (quoting *Green v. Scully*, 850 F.2d 894, 901–02 (2d Cir. 1988)) (alterations

and quotation marks omitted); *accord Haak*, 884 F.3d at 409.  "While a state court's 'subsidiary

factual' determinations, such as 'whether in fact the police engaged in the intimidation tactics

alleged by the [Petitioner],' are presumed correct unless rebutted by the Petitioner with clear and

convincing evidence, the question of whether a challenged confession was voluntary under the

totality of the circumstances is a matter for 'independent federal determination.'"  *Baxter v.

Noeth*, No. 17 Civ. 8918, 2020 WL 2950092, at *13 (S.D.N.Y. Feb. 7, 2020) (quoting *Miller v.

Fenton*, 474 U.S. 104, 112 (1985)), *report and recommendation adopted*, No. 17 Civ. 8918, 2020

WL 2904840 (S.D.N.Y. June 3, 2020).

Petitioner claims that the detectives who questioned him "overbore [his] will with their

language and the physical conditions of the interrogation."  Specifically, Petitioner argues that

Detective Madden's "insistence" that he make a statement rendered the statement involuntary and that he was "consistently interrogated for hours without sleep." These arguments are unpersuasive, as there is sufficient evidence to support the First Department's determination that Petitioner's statements were voluntary.

As to the conditions of interrogation, while Petitioner was in the precinct for twenty-one hours, he was questioned only intermittently during a period of about seventeen hours, starting at 10:50 p.m. on September 12, and ending at about 4:30 p.m. on September 13. Petitioner had several two-hour time intervals between questionings when he was alone and could have elected to sleep. Petitioner was not confined to the interview room, but was taken to the precinct kitchen and offered food, phone calls and bathroom breaks. Nor is there any evidence of physical mistreatment or threats. Taken in their totality, these circumstances are sufficient to find that the Appellate Division did not unreasonably determine that Petitioner's statements were voluntary. *See Diaz v. Senkowski,* 76 F.3d 61, 63 (2d Cir. 1996) (holding that defendant's statements were voluntary where he was interrogated for four hours and there was no evidence that he was denied food, bathroom access, or sleep and he was not beaten, otherwise abused, or handcuffed); *Delesline,* 755 F. Supp. 2d at 502 (habeas petitioner's statements found voluntary where held in custody for nearly twenty-four hours, was given some snacks and water during his confinement and had the opportunity to sleep in the stationhouse cell before his interrogation); *Holland v. Donnelly,* 216 F. Supp. 2d 227, 234 (S.D.N.Y. 2002) (upholding on habeas review state court determination that confession was voluntary where defendant was detained for nineteen hours and held overnight in a conference room without a bed but offered food and the opportunity to use the restroom and no force or coercive tactics were employed in interrogation).

In response, Petitioner notes Detective Madden's statements directing Petitioner to stop lying and write a statement and alleges that Madden offered leniency for cooperation.  Those allegations do not create coercion.  Madden's suggestion that Petitioner was lying was not unduly coercive in light of Petitioner's previous inconsistent responses to the police regarding the source of the blood on his clothes.  *See, e.g.*, *Parsad v. Greiner*, 337 F.3d 175, 185 (2d Cir. 2003) (statements were not coerced where detectives were increasingly hostile and introduced additional evidence linking petitioner to crime that contradicted his earlier statements).  Nor is a promise of leniency coercive, as "a direct or implied promise of help or leniency alone has not barred the admission of a confession where the totality of the circumstances indicates it was the product of a free and independent decision."  *Green*, 850 F.2d at 901; *accord Haak*, 884 F.3d at 409–14.

### B.  The Prosecutorial Misconduct Claims Are Procedurally Defaulted

Petitioner claims that: (1) the State falsely claimed at trial, contrary to the prosecution's expert, that Petitioner's blood mixed with the victim's and that this statement caused prejudice despite a curative instruction by the trial court; (2) the prosecution knowingly suborned perjury by Detective Pettit, by allowing him to make allegedly false statements or misrepresentations about Ruiz's observations and (3) the prosecution "willfully or inadvertently suppressed evidence that would be considered favorable to [him]" in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  The 440 Court expressly found that "these [three] record-based [claims are] . . . denied pursuant to [N.Y.C.P.L.] § 440.10(2)(c)," which provides that a court reviewing a § 440.10 motion to vacate must not consider grounds that could have been raised on direct review but were not.  The Second Circuit has found that § 440.10(2)(c) is a firmly established independent and adequate state procedural bar.  *See Sweet v. Bennett,* 353 F.3d 135, 141 (2d Cir.

2003); *accord Rivera v. Colvin*, No. 15 Civ. 9426, 2019 WL 2023744, at *11 (S.D.N.Y. May 8, 2019); *see also Brown v. Lee,* No. 10 Civ. 7605, 2011 WL 3837123, at *12 (S.D.N.Y. Aug. 30, 2011) ("The denial of a [N.Y.C.P.L.] § 440 motion pursuant to [N.Y.C.P.L.] § 440.10(2)(c) is an independent and adequate state ground that procedurally bars habeas review.").  Accordingly, because petitioner's claims are "procedurally defaulted on independent and adequate state grounds, there is no cause to review [petitioner's] claim[s] on the merits."  *Rodriguez v. Schriver*, 392 F.3d 505, 512 (2d Cir. 2004).  Again, the record does not support a finding of cause for Petitioner's procedural default and prejudice; nor does the record contain any showing of actual innocence.  *See Olsen*, 2020 WL 685707, at *18 (citing *Schlup*, 513 U.S. at 321).  Petitioner's prosecutorial misconduct claims are therefore barred from review.  *See Grey v. Hoke*, 933 F.2d 117, 121 (2d Cir. 1991); *accord Sanabria v. Martuscello*, No. 15 Civ. 1534, 2019 WL 4942118, at *9 (S.D.N.Y. Oct. 8, 2019).

### C.  Ineffective Assistance of Trial Counsel

Petitioner alleges that trial counsel was deficient for failing to: (1) investigate whether Ruiz should be called; (2) contest petitioner's prior "bad acts" at trial; (3) adequately object to the prosecutor's hypothetical question to the expert DNA witness and (4) "properly and adequately object[] to the prosecution's misrepresentation of evidence at summation."

The 440 Court found the last three claims were "primarily record based" and thus procedurally barred, expressly citing N.Y.C.P.L. § 440.10(2)(c).  For the same reasons set forth above, these grounds are not reviewable because they are barred by an independent and adequate state procedural ground.  *See Sweet*, 353 F.3d at 139–40.

The 440 Court did address the merits of Petitioner's failure to investigate claim, rejecting as "conclusory" and "unsupported by any other evidence" his argument that Ruiz would have

provided exculpatory testimony.  Because Petitioner has exhausted his state court remedies for this claim and the 440 Court rendered a final decision on the merits, this Court must review whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or rested on "an unreasonable determination of the facts."  28 U.S.C. § 2254(d).

Petitioner's ineffective assistance arguments are unpersuasive because he has failed to show deficient performance as a legal and factual matter.  "[T]o establish a claim of ineffective assistance of counsel, [a habeas petitioner] must (1) demonstrate that his counsel's performance fell below an objective standard of reasonableness in light of prevailing professional norms; and (2) affirmatively prove prejudice arising from counsel's allegedly deficient representation." *Cornell v. Kirkpatrick*, 665 F.3d 369, 375 (2d Cir. 2011) (internal quotation marks omitted); *accord Gross v. Graham*, 802 F. App'x 16, 18 (2d Cir. 2020) (summary order).

Deficient performance requires habeas courts to find evidence on "the record [that] demonstrate[s] that counsel made errors [arising] from oversight, carelessness, ineptitude, or laziness," that cannot be convincingly characterized as trial strategy.  *Cornell*, 665 F.3d at 377; *accord Gross*, 802 F. App'x at 18.  "To establish prejudice, '[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"  *Gross*, 802 F. App'x at 18 (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).  "In assessing prejudice, [the court] consider[s] the cumulative effect of the errors committed by counsel."  *Id.*; *see also Harrington v. Richter*, 562 U.S. 86, 112 (2011) ("The likelihood of a different result must be substantial, not just conceivable.").  When reviewing a habeas claim, "[t]he question is not whether a federal court

believes the state court's determination under the *Strickland* standard was incorrect but whether

that determination was *unreasonable* -- a substantially higher threshold." *Cornell*, 665 F.3d at

375; *accord Gross*, 802 F. App'x at 19; *see also Woods v. Donald*, 575 U.S. 312, 316–17 (2015)

(mandating that AEDPA review of claims of ineffective assistance "must be 'doubly deferential'

in order to afford 'both the state court and the defense attorney the benefit of the

doubt.'" (quoting *Burt v. Titlow*, 571 U.S. 12, 15 (2013))).

Defense counsel's failure to call Ruiz to the stand does not amount to deficient

performance.  Instead, the record establishes that defense counsel put serious effort into

attempting to locate Ruiz.  *See* ECF 13-3 at 698 (Petitioners' counsel stating at sentencing,

"while we were not able to locate him . . . . [w]e made every effort through our investigators to

find [Ruiz]"); *see also Jiang v. Larkin*, No. 12 Civ. 3869, 2016 WL 1718260, at *20 (S.D.N.Y.

Apr. 28, 2016) ("[I]t is not within the scope of this Court's authority on habeas review to say

whether more diligence on the part of the trial counsel would have yielded" a witness's location).

Nor did Ruiz's absence prejudice Petitioner.  As previously stated, it is not certain whether or

how Ruiz would have testified, or that such testimony would create a "reasonable probability" of

a different result given the record evidence tending to incriminate Petitioner.  *Harrington*, 562

U.S. at 104.  Finally, as the 440 Court noted, Petitioner's claim is unpersuasive because by his

own admission "his trial attorney did 'just enough to pass the threshold on reasonable

representation so as to be considered he gave effective representation.'"  *See* ECF 15 at 467.  As

such, defense counsel's representation of Petitioner did not "[fall] below an objective standard of

reasonableness."  *Gross*, 802 F. App'x at 18 (quoting *Strickland*, 466 U.S. at 688).  The petition

for writ of habeas corpus on the grounds of the failure to investigate claim is accordingly denied.

IV.     CONCLUSION

For the reasons stated above, the Petition is DENIED in its entirety.  The Clerk of Court

is respectfully directed to enter judgment dismissing the Petition, close the case and mail a copy

of this Opinion and Order to Petitioner.

As Petitioner has not "made a substantial showing of the denial of a constitutional right,"

no certificate of appealability will issue pursuant to 28 U.S.C. § 2553(c).

Dated: October 22, 2020
       New York, New York


                          **LORNA G. SCHOFIELD**
                    **UNITED STATES DISTRICT JUDGE**